PPL ENERGYPLUS, LLC, Petitioner

v.

FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.

American Municipal Power, Inc.,
Et Al., Intervenors.

No. 11–1341.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 5, 2013.

Sandra E. Rizzo, George H. Williams, Jr., Bracewell & Giuliani LLP, Washington, DC, for Petitioner.

Carol Jayne Banta, Robert Harris Solomon, Esquire, Solicitor, Federal Energy Regulatory Commission (FERC) Office of the Solicitor, Washington, DC, for Respondent.

Gary James Newell, Rebecca L. Sterzinar, Thompson Coburn LLP, Washington, DC, for Intervenor, American Municipal Power, Inc.

Robert A. Weishaar, Jr., McNees, Wallace & Nurick, Washington, DC, for Intervenor, PJM Industrial Customer Coalition.

Paul M. Flynn, Wright & Talisman, PC, Washington, DC, for Intervenor, PJM Interconnection, L.L.C.

Before: SENTELLE, Chief Judge, TATEL, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

### JUDGMENT

PER CURIAM.

This petition for review of an order of the Federal Energy Regulatory Commission was presented to the court, and briefed and argued by counsel. The court has accorded the issues full consideration and has determined they do not warrant a published opinion. See D.C. CIR. R. 36(d). It is

**ORDERED AND ADJUDGED** that the petition for review be denied.

Petitioner PPL Energy Plus, LLC ("PPL") seeks review of an order of the Federal Energy Regulatory Commission

dismissing a complaint it filed against PJM Interconnection, LLC ("PJM"), an independent regional transmission organization. See *PPL EnergyPlus, LLC v. PJM Interconnection, LLC* ("Order"), 134 FERC ¶ 61,263 (2011), *reh'g denied, PPL EnergyPlus, LLC v. PJM Interconnection, LLC* ("Rehearing Order"), 136 FERC ¶ 61,060 (2011). Before the Commission, PPL alleged that PJM violated the terms of its open access transmission tariff when it failed to include all transmission outages expected to last two months or longer in its annual modeling of the transmission system it administers. Specifically, PPL claimed that PJM's omission of outages resulted in underfunding of financial rights relied on by PPL and other market participants to hedge against congestion charges, leading to "unjust, unreasonable, and unduly discriminatory results" prohibited under the Act. See PPL Complaint, Joint Appendix ("J.A.") 36, 38; 16 U.S.C. § 824e(a).

PPL's position, in essence, is that PJM had an absolute duty under the tariff to ensure "revenue adequacy"—that is, full funding of financial rights—and the Commission thus erred when it read the tariff to "contemplate[ ] the possibility of underfunding," Order at P 46, and to permit PJM to seek a balance between revenue adequacy and other objectives. PPL asserts that by refusing to recognize the primacy of revenue adequacy under the tariff, the Commission failed to reach a reasoned decision and did not meaningfully respond to the objections PPL raised in its complaint.

We accord "substantial deference to the Commission's interpretation of filed tariffs," *Koch Gateway Pipeline Co. v. FERC*, 136 F.3d 810, 814 (D.C.Cir.1998), and see nothing in the Commission's order that suggests it has acted outside the limits of its discretion. PPL is cor-

rect that the tariff includes a goal of revenue adequacy, but in administering the open access transmission system PJM must balance that goal against other considerations. As the Commission explained in Order No. 890, its reforms in the open access tariff have been devised to "eliminat[e] the wide discretion that transmission providers currently have in calculating available transfer capability [equivalent to available transmission capability]," to "increase transparency," and "to increase the ability of customers to access new generating resources and promote efficient utilization of transmission by requiring an open, transparent, and coordinated transmission planning process." *Preventing Undue Discrimination and Preference in Transmission Service*, Order No. 890, 72 Fed.Reg. 12,-266, 12,267 (Feb. 16, 2007). As PJM and the Commission have repeatedly observed, there is tension between these goals and the goal of revenue adequacy. Omitting outages from a transmission system model increases the risk that the financial rights derived from the model will fail to fully hedge against congestion charges (PPL's concern), but it also increases the amount of firm service a transmission provider can offer prospective customers. See PJM Answer to PPL Complaint, J.A. at 197–99; PJM Br. 13–14; Order at P 43; Rehearing Order at P 29; Resp. Br. 21–22.

Mindful of this regulatory framework, the Commission read the tariff as granting PJM discretion in deciding which outages merited inclusion in its system model. In support of this conclusion, the Commission noted language in the tariff stating that PJM's pursuit of revenue adequacy "shall be based on reasonable assumptions about the configuration and availability of transmission capability." Order at P 41. The Commission also observed that PPL's preferred reading of the tariff would "result in

the failure of the optimization program" PJM uses to balance system capacity against revenue adequacy, and leave PJM unable to provide full economic use of the transmission system's capability. *Id.* at P 43.

PPL has not drawn our attention to any language in the tariff that compels the conclusion that PJM must in every modeling decision allow the goal of revenue adequacy to trump other regulatory goals. In its complaint, PPL invoked language from a PJM manual stating that outages lasting two months or longer "will be included" in PJM's system model. J.A. at 37. At oral argument PPL did not appear to press that contention; but assuming the claim is still before us, we believe the Commission acted reasonably in concluding that the manual is not binding on PJM and that the manual means merely that PJM must *consider* including outages lasting two months or longer. See Order at P 42.

Pursuant to Rule 36 of this Court, this disposition will not be published. The clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc.* See FED. R.APP. P. 41(b); D.C.CIR. R. 41.